OPINION OF THE COURT
Robert Charles Kohm, J.
The People move to revoke bail pursuant to CPL 530.60.
I
BACKGROUND
The three defendants are charged, along with five codefendants, with numerous class A-l drug felonies and other felonies, in connection with the sale of narcotics.
In March 1997, bail was set in the sum of $2 million on each defendant, and later reduced to one-half million dollars on each.
The District Attorney now moves to revoke defendants’ bail. The People contend that the recent criminal behavior by all three supports a finding by this court of good cause to revoke bail pursuant to CPL 530.60 (1).
Such illegal conduct includes threats, by words and deeds, to witnesses in this case and creates a danger to the administration of justice. Further, defendants’ continued liberty would allegedly place witnesses at risk.
*612 To support the relief sought, the prosecution sets forth the following facts. John McDonnell was arrested on March 9, 1998 for impersonating a police officer, inter alia, and later pleaded guilty to Vehicle and Traffic Law § 511, an unclassified misdemeanor, in satisfaction of all charges. Defendant McDonnell is serving a sentence on this matter since he failed to pay a fine after being sentenced to an unconditional discharge.
On April 29, 1998, defendant McDonnell was" arrested a second time, along with codefendant Edward O’Boyle. The defendants are charged with forgery in the second degree, criminal possession of a forged instrument in the second degree, criminal possession of stolen property in the fifth degree (2 counts) and possession of burglar’s tools. The criminal acts were observed by witnesses (known to the District Attorney) and involved altering the license plates on a van on April 29, 1998 at 110th Street and 65th Road in Forest Hills. The alteration involved affixing stolen license plates over the van’s original plates. Inside the van was found masks, two-way radios, a cell phone, bolts and a screwdriver. The vehicle’s windows were also covered with plastic and peepholes were cut in the plastic. It is the District Attorney’s belief that this van was to be used in abducting eyewitnesses in this case.
II
WITNESSES
The District Attorney’s office has indicated that there are two cooperating witnesses in this case (designated as CW No. 1 and CW No. 2). On April 28, 1998, the mother of CW No. 1 told her son that two individuals visited her home, identifying themselves as private detectives and asked to speak to her son, who was not home at that time. They stated that both were employed by Daniel O’Boyle. One man identified himself as Garth Rogers of Superior Investigations & Security Corporation. The following day, Deputy Chief Lawrence J. Festa contacted Mr. Rogers and asked if he was employed by the attorneys for Daniel O’Boyle to locate witness CW No. 1. The investigator responded in the negative and stated that he was not doing it for the attorneys but was hired by “the family.”
Contact was next made with CW No. 2, who told the District Attorney’s office that Daniel O’Boyle telephoned and requested a meeting with him and their private investigator. When their witness did not meet with Daniel O’Boyle, an individual who identified himself as Richard Lea telephoned him and allegedly *613 asked him to lie about drug transactions with the O’Boyles by stating that he never bought any from the O’Boyles. The investigator made a tape recording of his conversation. Furthermore, this witness later indicated that on April 29 he was at 65th Road and 110th Street as required by his employer. This location was a common meeting place for him and the O’Boyles, utilized in the past. The location was the same place where Edward O’Boyle and John McDonnell were arrested with the van.
Based on the above, the People maintain that the defendants have violated the bail conditions set by the court and have intimidated both witnesses. Additionally, the use of the van at that time and location gives rise to an inference that they intended to accost or restrain the second witness in such van. Under such circumstances, the People seek revocation of the bail.
III
THE HEARING
A full hearing was held on the issues, beginning on May 6, 1998, continuing to May 11, and terminating on May 14, 1998. The People called the two private investigators, Mr. Garth Rogers and Mr. Richard Lea, as well as Deputy Chief Lawrence J. Festa of the Queens County Investigation Unit. The defendants called attorney Diarmuid White, who is of counsel to the attorneys for all three defendants.
Basically, the People urge this court to grant relief on two grounds:
(1) There has been good cause shown pursuant to CPL 530.60 (1) by virtue of the defendants’ current illegal activities.
(2) That reasonable cause to believe the defendants have intimidated a witness exists in violation of CPL 530.60 (2) (a).
IV
CPL 530.60 (1)
The first theory of the People rests on CPL 530.60 (1). This section reads in relevant part: “Whenever in the course of a criminal action or proceeding a defendant is at liberty as a result of an order of recognizance or bail issued pursuant to this article, and the court considers it necessary to review such order, it may, and by a bench warrant if necessary, require the defendant to appear before the court. Upon such appearance, *614 the court, for good cause shown, may revoke the order of recognizance or bail.” (Emphasis supplied.)
The testimony of the private investigators indicates that they sought to get in touch with confidential witnesses by phone and personal contact. These investigators stated that they were acting as agents of the O’Boyle family and not of any attorney.
Additional evidence also establishes that defendant Daniel O’Boyle telephoned CW No. 2 and requested a meeting with him and the private investigators. When no meeting took place, Investigator Lea called the witness and asked questions concerning drug activity with defendant Daniel O’Boyle.
Some time after that, Daniel O’Boyle contacted the witness and asked him to say nothing about drugs to the investigators. Based then on the private investigators’ actions, defendant Daniel O’Boyle’s phone call, the postbail criminal acts of the defendants, and the rented van with improper license plates which gave rise to a new indictment, the People argue that good cause has been shown to revoke the bail imposed under indictment number 11729/96.
The defendants oppose such relief and argue that the investigators broke no laws, nor engaged in deceptive practices. They were simply gathering information pertinent to the case. As for the van, its use was innocent and unconnected with the witnesses. Further, defendants argue that all tapes and investigation findings constitute attorney work product or attorney-client material and are privileged.
A review of the evidence indicates that the defendants have engaged in postbail criminal conduct and have performed acts which at the very least intimidated two confidential witnesses. Further, one of these acts involving the van has led to a criminal charge in a second indictment. In addition, the court has found that the investigators’ tapes and actions are not privileged and constitute evidence at this hearing.
Turning to the law in this area, revocation of bail pursuant to CPL 530.60 (1) must be “ ‘based upon some factor that has a material bearing upon the probability of defendants’ future attendance’ ” (People v McCullough, 174 Misc 2d 418, 419), which must be determined in a summary hearing (People v Outley, 80 NY2d 702, 712-713). Also, the court must consider the factors outlined in CPL 530.60 (2) (a) (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 530.60, at 112).
Evaluating the evidence, this court finds that the chain of related criminal acts furnishes good cause to believe that *615 they would have a material bearing upon the probability of defendants’ future attendance.
V
CPL 530.60 (2)
The People next move under CPL 530.60 (2) (a). This section reads: “Whenever in the course of a criminal action or proceeding a defendant charged with the commission of a felony is at liberty as a result of an order of recognizance or bail issued pursuant to this article it shall be grounds for revoking such order that the court finds reasonable cause to believe the defendant committed one or more specified class A or violent felony offenses or intimidated a victim or witness in violation of sections 215.15, 215.16 or 215.17 of the penal law while at liberty. Before revoking an order of recognizance or bail pursuant to this subdivision, the court must hold a hearing and shall receive any relevant, admissible evidence not legally privileged. The defendant may cross-examine witnesses and may present relevant, admissible evidence on his own behalf. Such hearing may be consolidated with, and conducted at the same time as, a felony hearing conducted pursuant to article one hundred eighty of this chapter. A transcript of testimony taken before the grand jury upon presentation of the subsequent offense shall be admissible as evidence during the hearing. The district attorney may move to introduce grand jury testimony of a witness in lieu of that witness’ appearance at the hearing.” (Emphasis supplied.)
On May 6, 1998, the Grand Jury of Queens County indicted Edward and Daniel O’Boyle, along with John McDonnell, on crimes connected with the rented van under indictment number 1639/98. These counts were intimidating a witness in the third degree (Penal Law § 215.15); forgery in the first degree (2 counts) (Penal Law § 170.15); forgery in the second degree (2 counts) (Penal Law § 170.10); criminal possession of a forged instrument in the second degree (2 counts) (Penal Law § 170.25); criminal possession of stolen property in the fifth degree (3 counts) (Penal Law § 165.40); possession of burglar’s tools (2 counts) (Penal Law § 140.35); and conspiracy in the fifth degree (Penal Law § 105.05).
The court inspected the Grand Jury minutes and found that there was sufficient legal evidence adduced to sustain the indictment. The Grand Jury minutes were admitted into evidence during the revocation hearing since the second indict *616 ment charges the defendants with intimidating a witness, in violation of section 215.15 of the Penal Law. However, the court refused to let the defendants inspect these minutes, as such examination would reveal the names of the confidential witnesses and thus frustrate the purpose of Penal Law § 215.15 by possibly placing them in danger. Also, such inspection would unjustifiably impede the trials of both indictment number 11729/96 and indictment number 1639/98.
The defendants challenge this court’s refusal to permit them to inspect, arguing that this ruling violates both statutory and case law.
A
Grand Jury Inspection
GPL 530.60 (2) (a) permits Grand Jury testimony, relating to the subsequent offense, to be “admissible as evidence during the hearing.” Further, the District Attorney may introduce such Grand Jury witness testimony in place of the witness’s physical appearance at the hearing.
The defendants argue that since subdivision (2) (a) requires the court to find reasonable cause to believe that specified crimes were committed, it is necessary to conduct a summary or full hearing (cf, People v Outley, supra). The statute itself emphasizes this by permitting a defendant the right to “cross-examine witnesses” and present “relevant, admissible evidence on his own behalf.” Since a full hearing is required, all witnesses must be available for examination or cross-examination. If the People choose the alternate method of presenting evidence by introducing a transcript of the Grand Jury testimony, then similarly such evidence must be made available to the defendant for the purpose of obtaining witnesses for rebuttal.
To support this view, the defendants cite the case of People ex rel. Ryan v Warden (113 AD2d 116 [1985]). In this case of first impression, the Appellate Division, First Department, was faced with the situation in which a defendant’s bail was revoked after he was arrested on a new charge. The hearing court based its decision solely on an in camera inspection of the Grand Jury minutes and found reasonable cause to believe that the defendant had committed a class A or violent felony offense while at liberty.
The Appellate Division, First Department, reversed the lower court and stated: “By not allowing petitioner’s counsel to examine the only evidence admitted at the hearing, the hearing *617 court negated CPL 530.60’s mandate that the accused be permitted to confront the evidence against him and offer evidence in his own behalf. Without the right to examine the minutes submitted, petitioner was unable to challenge their sufficiency, authenticity or accuracy or the admissibility of the evidence contained therein. Moreover, since petitioner was not informed of the evidence against him, he was unable to intelligently decide whether to present evidence in his own behalf, what that evidence should be, or what he should or could offer in mitigation as provided for in the statute.” (Supra, at 118.)
The First Department further pointed out (supra, at 119): “The hearing court was charged with making a crucial factual determination. In making that determination, the court relied solely upon the transcript of Grand Jury proceedings. Nevertheless, the court did not reveal the contents of that transcript to counsel and refused to permit petitioner to examine, criticize or refute the evidence submitted against him. Therefore, the hearing for revocation of bail was not conducted pursuant to the mandate of CPL 530.60 (2) (a).”
In People ex rel. Becker v Mitchell (185 AD2d 133, 134), the Appellate Division, First Department, endorsed the earlier conclusion by holding: “We do not express any opinion on whether revocation of bail was warranted, but do find that it was error to remand petitioners without bail based on Grand Jury minutes underlying indictment number 2778/92, without giving counsel access to those minutes (People ex rel. Ryan v Warden, 113 AD2d 116).”
The defendants thus conclude that the failure to make the minutes available in the instant case violated the express mandate of CPL 530.60 (2) (a), citing the Ryan rationale as authority.
An analysis of Ryan (supra) and the present case shows several important differences. The first (and major) one is that the sole basis of the hearing court’s revocation was the in camera review of the minutes. The Appellate Division, First Department, in that case was concerned with evidence and the minutes constituted all the evidence. Without access to such evidence, the defendant was truly “unable to challenge their sufficiency, authenticity or accuracy” (supra, at 118). In the present revocation hearing, the Grand Jury minutes constituted only a small portion of the evidence presented by the People. The majority of the evidence was supplied by the private investigators and law enforcement officials, who gave details of contacts with the confidential informers and the role *618 of the rented van vehicle. Hence, there was sufficient independent legal evidence, outside of the Grand Jury minutes, to support the pattern of witness intimidation.
Under these circumstances, the court believes that the crux of the Ryan case (supra) is that a defendant is entitled to confront the evidence against him and when the Grand Jury minutes constitute all of that evidence, then the transcripts must be supplied. When there is sufficient legal evidence, in addition to the Grand Jury testimony, then such minutes are not necessary to the court’s finding and need not be supplied.
Two other factors must be kept in mind which would support this sole evidence position. The first is that the defendant in the Ryan case (supra) was arrested originally on an assault charge and then taken into custody and charged, inter alia, with robbery. Thus, the two arrests were based on unrelated charges. Consequently, the second Grand Jury minutes had no connection with the first and the facts of the second action could not prejudice the first. Such is not the present case. While this fact alone might not have overruled Ryan, a sole testimony situation, it is an element to be considered.
A second circumstance that distinguishes this case from Ryan (supra) is that the intimidation of a victim or witness section was not present at the time the case was decided (1985), it was amended to include such intimidation the following year (1986), and thus the safety factor was not presented to the Appellate Division.
Based on the above, this court does not accept defendants’ contention that if the Grand Jury minutes are inspected during a revocation hearing, they automatically constitute evidence which must be turned over to the defendant regardless of their value as evidence. Rather, the court would restrict the Ryan case (supra) to its facts which indicate that the minutes must be turned over to be inspected only in those cases where they constitute the sole or essential evidence at a hearing. Under such reasoning, the defendants are not entitled to inspect the Grand Jury minutes in this case.
VI
CONCLUSION
The court finds that the testimony of the investigators was not privileged either under the attorney work product rule or the attorney-client exception, hence such statements constitute relevant evidence. Based on such testimony and the People’s *619 witnesses, the prosecution has established good cause under CPL 530.60 (1) to revoke the order of bail in regards to indictment number 11729/96.
In addition, the People have presented reasonable cause to believe the defendants intimidated two witnesses pursuant to Penal Law § 215.15 and this would also justify an order revoking the same bail (indictment No. 11729/96) based on the standards set forth in CPL 530.60 (2).
The People’s application to revoke bail is granted.